In re the Marriage of Jane E. STEN-
ZEL, n.k.a. Jane E. Hawes,
Petitioner, Respondent,

v.

Daniel L. STENZEL, Appellant.

No. C5–86–1559.

Court of Appeals of Minnesota.

Feb. 24, 1987.

Review Denied April 23, 1987.

Ann B. Barker, Mankato, for respondent.

David L. Olson, Edward M. Cohen, St. Louis Park, for appellant.

Considered and decided by CRIPPEN, P.J., and LANSING, and NIERENGARTEN, JJ., with oral argument waived.

## OPINION

NIERENGARTEN, Judge.

Pending dissolution of her marriage to Daniel, respondent Jane Stenzel was given temporary custody of their children. Upon dissolution, Jane was granted physical custody and joint legal custody. Upon motion of Daniel for amended findings or a new trial, the trial court judge amended the findings slightly for clarification but denied all other motions and Daniel appeals. We affirm.

## FACTS

Jane E. Stenzel and Daniel L. Stenzel were married in 1979. In December, 1984, Jane moved to Mankato with the children, Nathan, one and Joshua, three and one-half. At the time the parties separated, Daniel was laid off and at home caring for the children. He returned to work as a machinist in March of 1985. The issue is physical custody of the two children. Each party agrees that the other is a fit parent, that the children are too young to express a preference, and that the children should not be separated.

Daniel and Jane shared equal responsibility for meal preparation, purchasing clothing and toilet training. Jane testified that she took the children to the doctor, and read to, diapered and dressed the children more often than Daniel did. When Daniel was laid off and Jane was working, he took care of whatever Jane usually did, including meals, house cleaning and supervision of the children.

The social worker who did Jane's custody study recommended that Jane be given custody. The social worker was not aware that Jane was living with an unemployed, twenty-three year old male with a record that included DWI's, careless driving and speeding. The social worker indicated that had she been aware of the situation it might have affected her opinion on custody. Daniel's custody study found that he had the ability and desire to be a good parent and recommended him as a "suitable custodial parent for his sons."

## ISSUES

1. Did the trial court err in finding that respondent was the primary caretaker?

2. In making its custody determination did the trial court err in not considering certain conduct of respondent?

## ANALYSIS

In reviewing custody awards this court is limited to determining "whether the trial court abused its discretion by making findings unsupported by the evidence or by improperly applying the law." *Pikula v. Pikula*, 374 N.W.2d 705, 710 (Minn.1985).

I

When determining custody the court must consider the best interests of the child. Minn.Stat. § 518.17, subd. 3 (1984). The best interest of the child includes, among other things:

1. The wishes of the child's parents.
2. The preference of the child if the court feels the child is old enough to express a preference.
3. The relation between the child and parents, siblings and others who might affect the child's best interests.
4. The child's adjustment to home, school and community.
5. The mental and physical health of all those involved.
6. The capacity and disposition of the parties to give the child love and affection.

Minn.Stat. § 518.17, subd. 1. When the evidence shows that both parents are acceptable custodians, and the children are too young to express a preference, custody should be given to the primary caretaker. *Pikula*, 374 N.W.2d at 712.

Both parents claim to be the primary caretaker. *Pikula* laid out some initial criteria on which to base this determination, including *inter alia:*

1. preparation of meals;
2. bathing, grooming and dressing;
3. arranging for medical care;
4. arranging alternative care;
5. putting child to bed at night, attending to child in the middle of the night, and waking child;
6. disciplining;
7. toilet training;
8. educating, i.e., religious, cultural, social, etc.; and
9. teaching elementary skills.

*Pikula*, 374 N.W.2d at 713.

The record shows that the parties shared responsibility quite evenly in some of the *Pikula* criteria. However, more of the primary responsibilities, such as dressing and reading to the children, had been assumed by Jane. The determination of who was the primary parent must be measured at the time the dissolution proceeding was commenced, *Pikula*, 374 N.W.2d at 714, i.e., "the point in time at which the family relationships were physically disrupted by events leading to the dissolution * * *." *Id.* at n. 3. Daniel argues that because he was laid off and at home caring for the children while Jane worked at the time the parties separated he was the primary caretaker. Jane, however, maintains that she has continued to be the primary caretaker all along. The record does establish that even though Daniel may have been supervising the children's waking hours more than the mother just prior to separation because of the lay-off, Jane continued to be a part of and responsible for more of the primary caretaking duties. The trial court's findings were consistent with *Pikula* and supported by the evidence.

## II

Daniel also argues that the trial court erred in not considering Jane's companion in its custody determination. In making a custody determination "[t]he court shall not consider conduct of a proposed custodian that does not affect his [or her] relationship to the child." Minn.Stat. § 518.17, subd. 1 (1984). The evidence did not establish that Jane's choice of a housemate affected her parenting ability or her relationship with the children.

There was no evidence presented that the boyfriend's conduct adversely affected Jane's relationship with her children or her fitness as a parent.

## DECISION

Affirmed.